UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSAN VANDERSTEEN, | ) |
| | ) |
| Plaintiff, | ) Case No. 07 C 5632 |
| | ) |
| v. | ) Magistrate Judge Sidney I. Schenkier |
| | ) |
| PATRICK B. KELLY and WETTERAU | ) |
| HOMESTEAD INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

On September 6, 2005, defendant Patrick B. Kelly was driving a tractor semi-trailer that was involved in a motor vehicle accident on the Chicago Skyway (doc. # 111, Pretrial Order at 5). At the time, Mr. Kelly was employed by defendant Wetterau Homestead Inc. ("Wetterau"), which owned the tractor semi-trailer (*Id.*). Plaintiff, Susan Vandersteen, who at the time was sitting in the passenger seat of a car stopped in traffic waiting to pass through the outbound toll plaza, alleges that she sustained injuries as a result of the accident (Compl. ¶¶ 4-11).

On September 5, 2007, Ms. Vandersteen filed a complaint in the Circuit Court of Cook County seeking compensatory and punitive damages from both Mr. Kelly and Wetterau. Wetterau filed a timely notice of removal based on diversity jurisdiction, and on January 14, 2008, by consent of the parties as authorized by 28 U.S.C. § 636(c) and pursuant to Local Rule 73.1, the case was reassigned to this Court for all proceedings including entry of final judgment (doc. # 18).

After discovery and summary judgment briefing, on December 31, 2009, this Court granted Wetterau's motion for summary judgment as to Count III, which sought punitive damages against Wetterau, and denied Mr. Kelly's motion for summary judgment as to the punitive damages claim

against him (doc. # 86). The upcoming trial will deal only with damages, as there is no dispute as to liability: defendants admit that Mr. Kelly was negligent and that Wetterau is vicariously liable for Mr. Kelly's negligence (Pretrial Order at 5, 6). Ms. Vandersteen seeks compensatory damages for injuries she allegedly suffered as a result of Mr. Kelly's negligence, for which Wetterau would be vicariously liable, and punitive damages for Mr. Kelly's alleged willful and wanton conduct, for which Wetterau would *not* be responsible.

On January 29, 2010, Wetterau filed the instant motion to bifurcate the jury trial into separate compensatory and punitive damages phases (doc. # 87). Plaintiff opposes the motion (doc. # 116); Mr. Kelly has not taken a position on the motion. For the reasons set forth below, we grant Wetterau's motion for bifurcation.

## I.

Federal Rule of Civil Procedure 42(b) provides that: "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). If one of these criteria is met – preventing prejudice to a party or promoting judicial economy – a district court may order bifurcation as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment. *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007). "The district court has considerable discretion to order the bifurcation of a trial . . ." *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000).

## II.

Wetterau argues that it will suffer prejudice if the jury hears evidence of punitive damages and compensatory damages in a unitary proceeding, and that judicial economy will be served by a

bifurcated trial. Ms. Vandersteen disagrees, but she does not allege that she will suffer prejudice if the trial is bifurcated into compensatory and punitive damages phases (doc. # 116, Pl.'s Resp.). For the reasons set forth below, the Court concludes that bifurcation would prevent any risk of prejudice to Wetterau, without incurring any significant cost to judicial efficiency.

## A.

Wetterau contends that it will be prejudiced by the presentation of evidence as to Mr. Kelly's alleged willful and wanton conduct, for which Wetterau is not liable. In the pretrial order, Ms. Vandersteen identified eleven potential trial witnesses for her punitive damages claim, including herself, Mr. Kelly, Troy and William Wetterau, and various investigating police officers (Pretrial Order at 10-12). Wetterau argues that testimony by its corporate officers and the police officers as to the basis for punitive damages could lead the jury to consider Mr. Kelly's alleged willful and wanton conduct when determining the issue of compensatory damages.

In her response, however, Ms. Vandersteen asserts that because of this Court's grant of summary judgment in favor of Wetterau on the punitive damages claim against it, she will call at most three witnesses to prove her remaining punitive damages claim: Mr. Kelly, Officer Nigro, and if necessary, a keeper of records to lay the foundation for admission of the results of Mr. Kelly's blood test which was positive for cocaine (Pl.'s Resp. at 2). In light of the small number of additional witnesses on the punitive damages issue, Ms. Vandersteen disputes Wetterau's contention of prejudice from a unitary proceeding. In addition, Ms. Vandersteen argues that the risk of prejudice to Wetterau is small because the jury will be clearly instructed that the claim for punitive damages is against Mr. Kelly alone (*id.* at 3).

3

We conclude that the risk of prejudice to Wetterau is more than *de minimus* or speculative. To support her claim for punitive damages, Ms. Vandersteen will offer evidence of cocaine use by Mr. Kelly – as shown by a urine sample he gave the next day, a statement Mr. Kelly made to Wetterau shortly before that drug test, and Mr. Kelly's assertion of his Fifth Amendment right against self incrimination when asked questions about cocaine use prior to the accident. All agree that this evidence is irrelevant to the question of what damages a jury should award Ms. Vandersteen for her alleged injuries. But, that evidence is relevant to a jury's decision as to whether Mr. Kelly engaged in willful and wanton conduct that warrants the imposition of punitive damages. If presented during a compensatory damages phase, evidence of that sort of conduct could affect that jury's decision as to the amount of compensatory damages to award. To be sure, the Court could instruct the jury to consider evidence of drug use by Mr. Kelly only as to the punitive damages claim, and we presume that the jury would endeavor to follow that instruction. But, we see no reason to take the risk that a jury might fail to do so, if the cost to judicial efficiency from bifurcation is minimal. As we explain below, we find that to be the case here.

**B.**

Bifurcation will not adversely affect judicial economy and efficiency because the compensatory and punitive damages portions of the trial are easily segregable. Under Illinois law, "[t]he purpose of compensatory damages is to make the [injured] plaintiff whole." *Ill. Sch. Dist. Agency v. Pacific Ins. Co. Ltd.* 571 F.3d 611, 617 (7th Cir. 2009). To prove compensatory damages, the plaintiff must prove that she sustained actual injuries. *Horina v. City of Granite City, Ill.* 538 F.3d 624, 637-38 (7th Cir. 2008). Accordingly, Ms. Vandersteen's proof of her actual injuries will

4

be characterized primarily by the testimony of her doctors, herself, and those that have observed her alleged injuries (Pretrial Order at 10-12).

By contrast, the purpose of punitive damages is: "(1) to act as retribution against the defendant; (2) to deter the defendant from committing similar wrongs in the future; and (3) to deter others from similar conduct." *Gambino v. Boulevard Mortg. Corp.*, Nos. 1-07-3566, 1-08-0702, 1-08-0746, 1-08-1373, 1-08-1982, 1-08-1983, 1-08-2151, and 1-08-2152 (Cons.), 2009 WL 4795915, at *35 (Ill. App. Ct. Dec. 11, 2009). To prove punitive damages, a plaintiff must show that a defendant's act was "characterized by wantonness, malice, oppression, willfulness, or other circumstances of aggravation." *Id.* As Ms. Vandersteen explained in her response brief, proof of Mr. Kelly's alleged willful and wanton behavior will come in the form of testimony from Mr. Kelly, Officer Nigro, and possibly someone to lay the foundation for admission of the results of Mr. Kelly's blood test which was positive for cocaine. Thus, there should be no overlap in the evidence offered at the two phases of the trial.

Despite the lack of overlap, Ms. Vandersteen contends that it nonetheless would take additional time to reconvene the jury to hear a second phase of evidence (Pl.'s Resp. at 3). As she herself notes, however, the punitive damages phase will be short because there will be fewer witnesses. And, those are witnesses whom plaintiff would call at some point in the case: it will not add to the length of the trial to have them testify in a second, punitive damages phase rather than in a unitary damages trial. The added time it will take to have the jury separately instructed on punitive damages and separately deliberate on punitive damages is minimal.

Plaintiff cites this Court's decision in *Challenge Aspen v. King World Productions Corp.*, No. 00 C 6868, 2001 WL 1403001 (N.D. Ill. 2001), in which we denied a motion to bifurcate, as

5

authority in support of her position that we should deny Wetterau's motion for bifurcation (Pl.'s Resp. at 1-2). *Challenge Aspen* is distinguishable: in that case, the Court found that bifurcating the question of punitive damages from the liability and actual damages determination would create inefficiencies, because the "evidence necessary to establish whether there was fraudulent conduct likely would overlap with evidence that would show whether that conduct would warrant imposition of punitive damages." 2001 WL 1403001, at *2. By contrast, in this case, there is no overlap of the evidence that would be presented at the compensatory damages phase on the one hand, and the punitive damages phase on the other hand.

In addition, in *Challenge Aspen* the Court found that the defendants' argument that prejudice would result from evidence of their net worth being presented to the jury during the liability and actual damages phase was made at "such a level of generality that it could be urged as a basis for bifurcation of punitive damages issues in any case involving a potentially sympathetic plaintiff and wealthy defendant." 2001 WL 1403001, at *3. In this case, however, Wetterau's concern about prejudice is not one that would apply in every case: it is specific to the evidence that would be offered concerning Mr. Kelly and cocaine use. As we have explained above, the risk that a jury hearing this evidence during the damages phase would take it into consideration in awarding compensatory damages is sufficient to weigh in favor of bifurcation.

In deciding to conduct the damages trial in separate phases before the same jury, one phase addressing compensatory damages and one phase addressing punitive damages, we are not blazing a new trail. Other courts have also bifurcated trials between compensatory and punitive damages. *See, e.g., Shugart v. Central Rural Elec. Coop.*, 110 F.3d 1501, 1504 (10th Cir. 1997) (holding that district court did not err in bifurcating trial between actual and punitive damages); *Jenkins v.*

*Raymark Indus., Inc.*, 782 F.2d 468, 474 (5th Cir. 1986) (holding that bifurcating trial between punitive and actual damages was proper, because unlike with actual damages, with punitive damages the focus is on the defendant's conduct rather than the plaintiff's); *Hall v. Babcock & Wilcox Co.*, 69 F. Supp. 2d 716, 733 (W.D. Pa. 1999) (granting motion for new trial because separate trials for compensatory damage and punitive damage claims should have been, but were not, held); *Scheufler v. Gen. Host Corp.*, 895 F. Supp. 1411, 1414-15 (D. Kan. 1995) (bifurcating trial between the issues of actual damages and punitive damages). That is the course we will pursue here as well.

## CONCLUSION

For the foregoing reasons, we grant Wetterau's motion to bifurcate (doc. # 87). We will conduct the trial before one jury, but in two separate phases. The trial will begin with a compensatory damages phase and, after the jury delivers its verdict on compensatory damages, that same jury will proceed directly to the punitive damages phase.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: February 23, 2010**