IN THE UNITED STATES DISTRICT COURT 
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSAN VANDERSTEEN, | )<br>) |
| Plaintiff, | )<br>) |
| | ) No. 07 C 5632 |
| vs. | )<br>) Magistrate Judge Schenkier |
| PATRICK KELLY, and WETTERAU<br>HOMESTEAD, INC., | )<br>)<br>) |
| Defendants. | )<br>) |

## **MEMORANDUM OPINION AND ORDER**

This case arises out of a motor vehicle accident that occurred on September 6, 2005, on the Chicago Skyway. That accident occurred when defendant, Patrick Kelly, crashed into one or more cars while driving a semi-tractor trailer during the course of his employment with defendant Wetterau Homestead Inc. Plaintiff, Susan Vandersteen, claims that she suffered injuries while a passenger in a car involved in that accident. The parties have stipulated that Mr. Kelly was negligent in his operation of the semi-tractor trailer as of the time of the accident (doc. #111: Final Pretrial Order, at 5, ¶ 5). Because it is likewise stipulated that at the time of the collision Mr. Kelly was employed by Wetterau and acting within the scope and in the course of his employment with Wetterau (*id.*, ¶ 3), there is no dispute that Wetterau is responsible for any compensatory damages caused by Mr. Kelly's negligence.

Thus, the jury trial of this matter will address solely the question of damages to be awarded to Ms. Vandersteen as a result of the accident. In an earlier ruling (doc. # 86), this Court granted Wetterau's motion for summary judgment on the question of punitive damages, but denied Mr. Kelly's motion for summary judgment on punitive damages. Thus, at trial, the jury will consider

compensatory damages to be awarded against both Mr. Kelly and Wetterau, but will consider punitive damages only with respect to Mr. Kelly. In a separate ruling issued on February 23, 2010 (doc. # 120), the Court granted Wetterau's motion to bifurcate the trial of this matter into separate compensatory and punitive damages phases, to be conducted before the same jury. The trial of the matter will proceed with the jury first deciding compensatory damages against both defendants, and then turning separately to whether punitive damages should be awarded against Mr. Kelly.

It is against this backdrop that the Court now turns to the various motions *in limine* filed by the parties. Plaintiff has filed nine motions *in limine*, all combined in one omnibus pleading (doc. # 110); Wetterau has filed 15 motions *in limine* (doc. ## 88-102); and Mr. Kelly has filed five motions *in limine* (doc. ## 104-108). Our rulings on these motions *in limine* are set forth below.

I.

We begin with plaintiff's motions *in limine*, many of which are not contested. Plaintiff's motions *in limine* nos. 1 through 5 seek to bar any reference to the wealth, poverty or financial status of the parties; any comments or introduction of evidence concerning collateral source payments for Ms. Vandersteen's expenses; any comments or evidence as to the circumstances under which Ms. Vandersteen retained her counsel; any comments or evidence that would hold plaintiff up to ridicule or that refer to character traits other than those directly probative of plaintiff's truthfulness or veracity; and any reference to jurors by name except during *voir dire* (Pl.'s Motions *In Limine* 1-5, at 1-2). Motion *in limine* no. 9 asks that any motions *in limine* filed by defense counsel (if granted) apply not only to the plaintiff but also to defendants as well (*Id.*, at 2). Defendants do not oppose those motions *in limine* (Defs.' Resp. at 1), and they are granted.

Plaintiff's motion *in limine* no. 6 seeks to bar evidence of any prior injuries to plaintiff or medical treatment that she received that is unrelated to injuries allegedly sustained in the accident giving rise to this lawsuit. Defendants oppose that motion only insofar as plaintiff seeks to bar evidence concerning an ankle injury that Ms. Vandersteen suffered in a work-related accident some 18 to 20 years ago (Defs.' Resp. at 1-2). In a related vein, defendants oppose plaintiff's motion *in limine* no. 7, which seeks to bar evidence of Ms. Vandersteen's workers compensation claim filed in connection with that ankle injury (*Id.*). Defendants do not argue that this prior ankle injury is relevant to assessing what injuries, if any, Ms. Vandersteen suffered in the accident on September 6, 2005. Rather, defendants argue that the fact that that injury and the subsequent workers compensation claim is relevant to Ms. Vandersteen's credibility, because – according to defendants – in her deposition Ms. Vandersteen denied filing a workers compensation claim (Defs.' Resp. at 1). However, in the deposition excerpt on which defendants rely for that proposition Ms. Vandersteen testified that she did not receive any *unemployment* compensation; we do not read her testimony as denying that she ever made a workers compensation claim (*see Id.*, Ex. A at 14). Plaintiff's motions *in limine* no. 6 and 7 are granted in full.

In motion *in limine* no. 8, plaintiff seeks to bar reference to or evidence of Ms. Vandersteen's medical records from an emergency room visit on July 12, 2000. In opposition to the motion, defendants state that the medical records show a preexisting history of mental health issues, which defendants say Ms. Vandersteen has placed in issue by claiming that the accident has caused her to suffer post-traumatic stress disorder and an aggravation of preexisting mental health conditions (Defs.' Resp. at 2). Plaintiff's one sentence motion does not identify what is in the records, or why the records are irrelevant to any current claims she may pursue for mental health-related damages.

Accordingly, we deny motion *in limine* no. 8 without prejudice to plaintiff renewing her objection to admission to that evidence at trial, where we better can assess its relevance on a more complete record.[1]

## II.

Plaintiff does not object to eight of Wetterau's fifteen motions *in limine*: Wetterau's motion *in limine* no. 1, to bar any reference to insurance; motion *in limine* no. 2, to bar witnesses from the courtroom; motion *in limine* no. 4, to bar use of Mr. Kelly's employment file, and driving logs and Wetterau's equipment files; motion *in limine* no. 8, to bar the testimony of Dr. Guaccio; motion *in limine* no. 9, to bar the testimony of Dr. Mustoe as it pertains to alleged injuries to Ms. Vandersteen's breast implants; motion *in limine* no. 10, to bar Dr. Ribaudo's testimony regarding Ms. Vandersteen's alleged cervical spine injury and a diagnosis of dysphagia; motion *in limine* no. 11, to bar evidence of Wetterau's financial condition, noncompliance with Federal Motor Carrier Safety Regulations and history regarding employee drug testing; and motion *in limine* no. 13, to bar the testimony of Dr. Singh regarding the costs of a future cervical anterior discectomy infusion and Ms. Vandersteen's prognosis (doc. ## 88-89, 91, 95-98, and 100). Those motions are granted. We now turn to Wetterau's contested motions *in limine*.

---

[1] As an additional basis for denying motion *in limine* no. 8, defendants argue that plaintiff testified at her deposition that she did not have mental health treatment prior to the date of the accident, and that these records thus are relevant to her credibility (Defs.' Resp. at 2). However, once again, the deposition citation offered by defendants fail to support that argument. In the deposition excerpt cited by defendants, Ms. Vandersteen testified that she had not treated with any psychiatrist prior to the automobile accident (*Id.*, Ex. A, at 53). Ms. Vandersteen was not asked whether she had any mental health treatment prior to the date of the accident – such as, from mental health professionals other than psychiatrists. We therefore reject defendants' alternate basis for seeking admission of the medical records from the July 12, 2000, emergency room visit.

4

## A.

In motion *in limine* no. 3, Wetterau seeks to bar use of photographs, videotape and/or testimony regarding damage to the motor vehicles and the accident (doc. # 90). In opposition to that motion, plaintiff argues that this evidence is relevant to whether a neck injury (for which plaintiff has had surgery) and post-traumatic stress disorder were caused by the crash (doc. # 118: Ex. 4, at 3). We agree with plaintiff that evidence of the accident scene may shed light on these claims of injury. While defendants' suggest that expert testimony linking evidence of the actual scene to the injuries alleged is a prerequisite for admissibility of the accident scene evidence (Wetterau Motion *In Limine* No. 3, at 3), Illinois law does not categorically impose such a requirement. *See, e.g. Ferro v. Griffiths*, 836 N.E.2d 925, 930 (Ill. App. 2005) ("[w]e refuse to adopt a rigid rule that proscribes the admission of pictures without an expert"); *Dicosola v. Bowman*, 794 N.E.2d 875, 880 (Ill. App. 2003) ("we do not hold that expert testimony must always be required for such photographic evidence to be admissible").

Wetterau also argues that even if relevant, the accident scene photographs and videotape should be excluded because they would inflame the jury (Motion *in Limine* No. 3, at 2). However, Wetterau has not provided the Court with any particular videotapes or photographs that it claims would be inflammatory, and we decline the invitation to decide in a vacuum whether the admission of any of the photographs or videotape would create a danger of unfair prejudice that substantially outweighs their probative value. Fed. R. Evid. 403. We therefore deny motion *in limine* no. 3 (doc. # 90), without prejudice to Wetterau seeking to exclude any particular photograph or videotape as irrelevant or unfairly prejudicial.

**B.**

In motion *in limine* no. 5, Wetterau seeks to bar damages testimony that it claims would be cumulative (doc. # 92). Wetterau states that Ms. Vandersteen has identified six lay witnesses who may testify at trial about her injuries and the effect they have had on her life: John Morelli, Cassie Brown, Karen Vandersteen, Karen Leep, Michael Leep, Sr., and Debbie Mutka. Wetterau argues that allowing six witnesses to testify about the same issues of injury to Ms. Vandersteen would be needlessly cumulative and, as a result, asks the Court to limit Ms. Vandersteen to calling only one lay witness with respect to damages (Motion *in Limine* No. 5, at 2).

Plaintiff opposes the motion without explanation or argument. But, the Court does not need argument in order to conclude that Wetterau's motion is premature. Wetterau makes clear in the final pretrial order that it denies that "the Plaintiff suffered injuries or was injured to the extent alleged as a result of the Defendants' acts or omissions" (Final Pretrial Order, Section 2(b)). We will not arbitrarily limit Ms. Vandersteen – in advance of trial – to only one lay witness to testify about damages. As the testimony and other evidence develops at trial, we will be in a better position to determine whether, at some point, to exercise our discretion to decide that any further testimony in damages by lay witnesses would be cumulative. Accordingly, motion *in limine* no. 5 is denied without prejudice.

**C.**

In motion *in limine* no. 6, Wetterau seeks to bar the use of accident investigation evidence developed by the Chicago Police Department (doc. # 93). Plaintiff objects to the motion only insofar as Wetterau seeks to bar the use of any photographs of the accident scene taken by the Chicago Police Department; in all other respects, plaintiff has no objection to motion *in limine* no. 6 (doc. #

118, Ex. 3, at 2). For the reasons we have already stated, the Court will not bar in advance of trial the use of any and all photographs of the accident scene. Accordingly, we grant Wetterau's motion *in limine* no. 6 in part: plaintiff may not offer any accident investigation evidence developed by the Chicago Police Department, with the exception of photographs of the accident scene. With respect to photographs of the accident scene, we will address their admissibility at a later time.

**D.**

Motion *in limine* no. 7 seeks to limit what Wetterau claims would be cumulative testimony from plaintiff's treating physicians (doc. # 94). Plaintiff has identified 11 treating physicians who may be called to testify: Drs. Gauccio, Singh, Gottlieb, Sonego, Warner, Helman, Musto, McGovern, Ribaudo, Long, and Christ. According to Wetterau, several doctors treated Ms. Vandersteen for the same injuries. Wetterau seeks to limit Ms. Vandersteen to one treater to testify about each alleged injury.

Ms. Vandersteen has identified Drs. Ribaudo, Sonego, and Warner to testify about her claim of psychological injuries. In her response to the motion *in limine*, Ms. Vandersteen withdraws Dr. Ribaudo on that subject (doc. # 118: Ex. 3, at 2). However, plaintiff asserts that both Dr. Sonego and Dr. Warner are necessary as witnesses to lay the foundation for admitting certain records under Federal Rule of Evidence 803(6), as Wetterau has refused to stipulate that they are business records (*Id.*, Ex. 5, at 1). We will not limit Ms. Vandersteen to calling either Dr. Sonego or Dr. Warner, when limiting her in this fashion may unfairly limit her ability to lay the foundation for admissible evidence.

Ms. Vandersteen has identified Drs. Musto, Helman and Christ to testify about an injury to her breast implants. Ms. Vandersteen has withdrawn Drs. Christ and Musto on that subject, leaving

only Dr. Helman as a potential witness with respect to a breast implant injury (Pl.'s Resp. Ex. 3 at 2). Plaintiff has identified Drs. Helman and Christ as witnesses who may provide testimony with respect to chronic headaches. Again, plaintiff has agreed in her response to the motion *in limine* to withdraw Dr. Christ on that subject, leaving Dr. Helman as the only witness to testify about chronic headaches (*Id.*). Likewise, Wetterau argues that plaintiff has listed Drs. Gauccio and McGovern to testify about the dental injury. In her response, plaintiff agrees to withdraw Dr. Gauccio as a witness on that subject, leaving only Dr. McGovern (*Id.*). Thus, as to these doctors and subjects, the motion is granted as unopposed.

Finally, Wetterau says that plaintiff seeks to call Drs. Gottlieb, Singh and Long to testify about her cervical injury. In her response, plaintiff agrees to withdraw Dr. Long on that subject (doc. # 118, Ex. 3 at 2). However, plaintiff argues that both Dr. Gottlieb and Dr. Singh should be permitted to testify about the cervical injury since they cover separate subjects: plaintiff seeks to have Dr. Singh testify about his treatment and the surgery he performed, and Dr. Gottlieb to testify about post-operative condition and future treatment (*Id.*, Ex. 5, at 2). Based on this explanation, it does not appear that these treaters would be offering cumulative testimony, and we therefore decline to force plaintiff to choose between them as witnesses.

Accordingly, motion *in limine* no. 7 is granted in part and denied in part.

### E.

Motion *in limine* no. 12 seeks to bar any evidence of fatigue and drug or alcohol use by Mr. Kelly (doc. # 99). Wetterau argues that since liability is conceded, that evidence would only be relevant to punitive damages. Wetterau argues that admission of this evidence while the jury is considering compensatory damages for injuries Ms. Vandersteen allegedly suffered in the accident

could result in unfair prejudice if the jury were inflamed by that evidence, and presumably, therefore returned a higher compensatory damages award than it otherwise might.

Plaintiff opposes the motion. Plaintiff argues why this evidence is relevant to the question of punitive damages (doc. # 118, Ex. 2), but does not address Wetterau's argument that admission of this evidence is irrelevant and would create unfair prejudice if presented while the jury is considering damages for the injuries Ms. Vandersteen suffered in the accident. That said, the Court's separate ruling granting Wetterau's motion to bifurcate fully addresses the concern that Wetterau has expressed in motion *in limine* no. 12. Evidence of fatigue and drug or alcohol use by Mr. Kelly will be admissible only during a punitive damages phase, after the jury already has decided what compensatory damage award is appropriate for Ms. Vandersteen. Accordingly, motion *in limine* no. 12 is denied.

### F.

Motion *in limine* no. 14 seeks to bar certain testimony by Dr. Gottlieb, who treated Ms. Vandersteen with respect to her cervical spine condition. Wetterau argues that Dr. Gottlieb's testimony concerning prognosis, permanency, and future medical expenses, as well as his testimony concerning proximate cause for her cervical spine condition, fail to meet the standards for admissibility under Federal Rule of Evidence 702, and that his testimony should also be barred because plaintiff failed to provide an expert report for Dr. Gottlieb as required by Federal Rule of Civil Procedure 26(a)(2)(B).

At the threshold, plaintiff argues that no report was required because Dr. Gottlieb is a treating physician and not a retained expert (doc. # 118: Ex. 6, at 1-3). We agree. Rule 26(a)(2)(B) requires a written report for those witnesses "retained or specially employed to provide expert testimony in

9

the case or . . . whose duties as the party's employee regularly involve giving expert testimony." A treating physician does not fall into either of these categories, as the commentary to Rule 26(a)(2) makes clear: "a treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report." Advisory Committee Notes, 1993 Amendments. Wetterau offers no basis to believe that Dr. Gottlieb lacked the qualifications to treat Ms. Vandersteen for her cervical spine condition, or to testify about his treatment of her. Thus, Dr. Gottlieb may testify as to his treatment of plaintiff without having filed a Rule 26(a)(2) report.

But, that is all that Dr. Gottlieb may testify about: his treatment of Ms. Vandersteen. Because plaintiff offered no Rule 26(a)(2)(B) report for him, Dr. Gottlieb may not assume the mantle of a retained expert and expand his testimony beyond the confines of his treatment of Ms. Vandersteen. The one treatment report submitted by plaintiff in opposition to the motion *in limine* (doc. # 118: Ex. 9) does not show that Dr. Gottlieb reached opinions on prognosis, permanency or future medical expenses as part of his treatment. Thus, before the Court will permit Dr. Gottlieb to testify about those matters, plaintiff will have to make a showing that Dr. Gottlieb in fact reached opinions on those matters as a part of his treatment of Ms. Vandersteen.

The treatment report does reveal that Dr. Gottlieb reached an opinion about the cause of Ms. Vandersteen's cervical spine condition. In that report, Dr. Gottlieb appears to conclude that the September 6, 2005, accident exacerbated a preexisting condition. Before allowing Dr. Gottlieb to testify to causation, plaintiff will be required to lay a foundation that Dr. Gottlieb had a reliable basis to conclude that the accident caused or exacerbated a preexisting condition, and that he reached that causation conclusion as a necessary part of his diagnosis and treatment of Ms. Vandersteen.

Accordingly, we deny motion *in limine* no. 14 insofar as it seeks to bar Dr. Gottlieb's testimony regarding prognosis, permanency, future medical expenses and causation, but will require plaintiff to lay a foundation for Dr. Gottlieb to testify about those matters as a part of his treatment of Ms. Vandersteen.[2]

### G.

Motion *in limine* no. 15 seeks to bar testimony by Dr. Warner concerning plaintiff's financial condition and the cost of his treatment of plaintiff for mental health issues after the accident (doc. # 102). Given that we have granted plaintiff's motion to bar reference to the wealth or financial status of the parties, we will grant Wetterau's motion insofar as it seeks to bar Dr. Warner from testifying about plaintiff's financial condition or ability to pay for treatment.

As to the other part of the motion, Wetterau complains that Dr. Warner cannot precisely allocate the portion of his treatment (and thus the cost of his treatment) related to mental health issues allegedly caused by the accident and mental health issues stemming from other causes. As a result, Wetterau argues that Dr. Warner should not be able to testify at all regarding his treatment of Ms. Vandersteen or the cost of the treatment. We disagree. The fact that Ms. Vandersteen may have mental health issues relating from other causes does not preclude the possibility that the September 2005 accident exacerbated those mental health issues or created new ones. Dr. Warner, Ms. Vandersteen's treating psychologist, plainly has opined that Ms. Vandersteen has mental health issues stemming from the accident. The fact that he cannot neatly compartmentalize the portion of

---

[2] The motion *in limine* also asks to bar testimony (presumably of Dr. Gottlieb) concerning an individual who died of a subdural hematoma and Dr. Singh's concurring opinion with respect to the necessity of surgery (Wetterau's Motion *in Limine* No. 14, at 3). Wetterau cites to a page from Dr. Gottlieb's deposition that contains no reference to a subdural hematoma, and cites no page of Dr. Gottlieb's deposition where he testifies regarding Dr. Singh's concurring opinion. Accordingly, we deny without prejudice that aspect of the motion.

11

her mental health condition which stems solely from the accident and that which stems from other causes does not render him disqualified to offer his opinions based on his treatment. Motion *in limine* no. 15 is denied.

### III.

Mr. Kelly has filed five motions *in limine*. Two of those motions *in limine* are unopposed: motion *in limine* no. 3, which seeks to bar any reference to Mr. Kelly's purported falsification of driving logs prior to the date of the accident, and motion *in limine* no. 5, which seeks to bar any mention of Mr. Kelly's prior driving record or application for employment (doc. ## 106, 108). Those motions are granted. Mr. Kelly's remaining three motions *in limine* are opposed: motion *in limine* no. 1, which seeks to bar reference to a drug test taken by Mr. Kelly and its results without proof of intoxication; motion *in limine* no. 2, which seeks to bar any reference to cocaine byproduct in Mr. Kelly's system at the time the drug test was administered; and motion *in limine* no. 4, which seeks to bar any testimony as to impairment of Mr. Kelly at the time of the accident (doc. ## 104, 105, 107).

For the reasons we stated in our earlier oral ruling denying Mr. Kelly's motion for summary judgment on punitive damages, the evidence of the drug test and its results are relevant. The presence of cocaine byproduct in Mr. Kelly's urine sample taken on September 7, 2005, the morning after the accident, would allow a jury to conclude that Mr. Kelly took cocaine at a time that would have been inconsistent with his being able to safely drive his semi-tractor trailer on September 6, 2005. In reaching that conclusion, we consider the evidence that shortly before taking the test, Mr. Kelly admitted to his employer that the test would show that Mr. Kelly had used cocaine. We are further mindful that during his deposition in this case, Mr. Kelly exercised his Fifth Amendment

right against self incrimination and refused to answer any questions concerning his use of cocaine prior to the accident, including when prior to the crash he had used cocaine; how much he had used; the effect cocaine has on his sleep; and whether once the acute affects of cocaine had passed he would feel fatigued. And, there is evidence that other events on the night of September 5 and the early morning hours of September 6, 2005, may have left Mr. Kelly so fatigued that he was in no condition to undertake his job assignment on the afternoon of September 6, and that he was so fatigued shortly before the accident that he should have stopped rather than attempted to press on. Thus, we deny motions *in limine* nos. 1 and 2.

All of this evidence would provide a basis for plaintiff to argue that Mr. Kelly was "impaired" at the time of the accident, at least to the extent that he was too fatigued – through sleep deprivation and/or use of cocaine and alcohol – to be driving. To the extent that Mr. Kelly is concerned that plaintiff will argue that Mr. Kelly was "impaired" in the sense that he was under the acute influence of cocaine at the time of the accident, plaintiff has disavowed that argument. In her opposition to the motion to bifurcate, plaintiff stated that "she is not contending that [Mr. Kelly] was intoxicated on cocaine at the time of the crash" (Pl.'s Resp. to Mot. to Bifurcate, at 2-3). With this understanding, Mr. Kelly's motion *in limine* no. 4 is denied.

## CONCLUSION

For the foregoing reasons, plaintiff's motions *in limine* nos. 1-5 and 9 are granted; motion *in limine* no. 6 is granted in part and denied in part; the plaintiff's motion *in limine* no. 7 is granted; motion *in limine* no. 8 is denied.

Wetterau's motions *in limine* nos. 1-2, 4, 8-11 and 13 are granted; motions *in limine* nos. 3, 5, 12, 14-15 are denied; and motions *in limine* nos. 6-7 are granted in part and denied in part.

Mr. Kelly's motions *in limine* nos. 1-2 and 4 are denied, and motions *in limine* nos. 3 and 5 are granted.

With respect to any motions *in limine* that have been granted, the parties are responsible for making their witnesses aware of these rulings, and insuring that they do not offer any testimony on matters precluded by this Memorandum Opinion and Order.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: February 23, 2010**